IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN DOE,** | |
| **Plaintiff,** | |
| | No.: 4:17-CV-01315 |
| -against- | |
| | (Judge Brann) |
| **THE PENNSYLVANIA STATE UNIVERSITY, THE PENNSYLVANIA STATE UNIVERISTY BOARD OF TRUSTEES, ERIC J. BARRON,** individually and as agent for The Pennsylvania State University, **PAUL APICELLA,** individually and as agent for The Pennsylvania State University, **KAREN FELDBAUM,** individually and as agent for The Pennsylvania State University, **KATHARINA MATIC,** individually and as agent for The Pennsylvania State University, | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

**MOTION OF PLAINTIFF FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUCTION PROHIBITING DEFENDANTS FROM BARRING PLAINTIFF FROM ATTENDING FALL SEMESTER 2017 CLASSES AT THE <u>PENNSYLVANIA STATE UNIVERSITY</u>**

And now comes Plaintiff, pursuant to Rule 65(a)(b) of the Federal Rules of Civil Procedure Rule, moves this Honorable Court to issue a Temporary Restraining Order and subsequent Preliminary Injunction prohibiting Defendants from barring Plaintiff from attending Fall Semester 2017 classes at The Pennsylvania State University and participation in the Penn State Jefferson seven (7) year pre-med program.

1. Plaintiff filed a Complaint on July 25, 2017 under the name John Doe[1]. Your Honor in an Order dated July 27, 2017 has granted Plaintiff permission to submit an accompanying brief, of no more than 35 pages. (**Exhibit "A"**)

2. In September of 2016, Plaintiff John Doe ("Plaintiff") was a freshman student participating in The Pennsylvania State University's- Jefferson ("Penn State" or the "University") prestigious combined pre-medical/medical program. On September 8, 2017 Plaintiff received "Notification of Administrative Directive"- No Contact Notice. (**Exhibit "B"**)[2]

3. On September 12, 2016, the Plaintiff was advised by Defendant Paul Apicella that a report of an incident "that may implicate the University's policy against sexual and gender based harassment and misconduct" (**Exhibit "C"**). was made against him. Although there were several meetings between the Plaintiff and the Defendants, the Plaintiff was not officially advised of the formal charges against him until May 11, 2017

---

[1] A motion seeking permission to allow the Plaintiff to proceed under a pseudonym is currently pending and was filed on July 27, 2017

[2] Plaintiff has redacted the names, addresses, and phone numbers of John Doe, Jane Roe and witnesses in several documents being annexed as Exhibits herein.

2

(Exhibit "D"). On June 27, 2017 Plaintiff's appeal of his suspension and further prevention from participating in the combined pre-medical/medical program for as long as his accuser is in the program was denied. (Exhibit "E") Penn State's Fall semester begins on August 21, 2017.

    4.    On June 1, 2017, the Plaintiff provided the Investigator a written correspondence entitled "Response to the Charge and Sanctions Notification". (Exhibit "F") This document was provided to the Hearing panel but Penn State's Office of Student Conduct **redacted** large portions of Plaintiff's June 1, 2017 statement[3]. (Exhibit "G") Plaintiff was then advised by both the Investigator and by the Associate Director for the Office of Student Conduct that he could verbally present the redacted information directly to the Hearing Panel.[4] When Plaintiff attempted to provide this crucial evidence to the Panel, the Chair of the Panel instructed him, **"you're allowed to say whatever you want to say,"** when the Plaintiff began to provide his recitation of the facts, **the Chair immediately objected and told Plaintiff he could not continue because the information was not in the investigative report.**

    5.    Plaintiff was denied the right to question his accuser at the hearing. However, he was permitted to "submit" question to Hearing Panel for them to pose to his

---

[3] The typed labeled "Redacted" as indicated on **Exhibit "G"** were not made by the Plaintiff but by the Defendants.

[4] Plaintiff was not provided with any documents included in Defendants' Investigation report including but not limited his redacted statement. The Plaintiff was provided only a very limited window to look at the documents but was not permitted to make copies. As such, plaintiff cannot provide the Court with the documents contained in Defendants' investigation file.

3

accuser. Plaintiff, in accordance with the Defendants' procedures submitted a type written list of questions. (**Exhibit "H"**) However, the Hearing Panel rejected almost all of the questions Plaintiff had submitted.

6. Plaintiff's accuser alleges to have suffered bleeding from the alleged incident. Jane Roe allegedly underwent a medical examination, close in time to the incident, but Defendants failed to inform Plaintiff of that fact until many months (April 2017) after the incident. Jane Roe continually refused to provide the information to the Defendants and the Defendants never insisted that she produce it before proceeding with the investigation.

7. Despite Jane Roe's months-long refusal to cooperate, at the June 6, 2017 hearing she was permitted to testify that she had underwent a medical examination following the alleged incident. The Hearing Panel and its Chair then ruled that her uncorroborated statement should be considered evidence that she had been sexually assaulted.

8. Plaintiff submitted questions to the Hearing Panel concerning Jane Roe's purported medical examination: (**Exhibit 'H"**).

> When and where did you have a medical examination?
> You were examined to see if there was any evidence of non-consensual penetration by Plaintiff. Is this correct?
> You received the results of that medical examination, in a report or records, right?
> Before you were examined, you explained to someone there what happened and why you wanted a medical examination, is this correct?
> And you provided information about whether you had any medical conditions and whether you are taking any medications?

4

9. Despite Jane Roe's continued refusal to provide any evidence of this examination during the investigation and the Hearing Chair permitting Jane Roe to testify about the unsubstituted examination, the Hearing Chair refusal to pose Plaintiff's very germane, important, and probative questions. The Hearing Panel blatantly ignored and refused to ask Plaintiff's questions regarding what the report said and what Jane Roe told the staff at the facility about the incident. There can be no doubt that the questions posed to Jane Roe during the alleged medical examination, such as what caused your injuries, would have no doubt been asked by the examining facility and documented in the report.

10. Contrary to the Hearing Panel's assertion, the existence and content of this mysterious medical examination report was NOT NEW EVIDENCE. Defendants had been asking for the information for some time and the Plaintiff was advised as to its existence approximately two (2) months before the hearing.

11. After redacting Plaintiff's statement and refusing to pose germane, pertinent and relevant question to the accuser, the Hearing Panel cited the accuser's credibility as the primary evidence relied upon in making their determination. (**Exhibit "I"**)

12. After failing to properly and timely notify the Plaintiff about the charges against him, Defendants unilaterally changed the rules in the middle of the investigation without any notice to the Plaintiff. The Office of Student Code of Conduct manual that was in effect in September of 2016 (**Exhibit "J"**) was effective November 3, 2016. (**Exhibit "K"**). Despite the fact the Plaintiff would meet with administrators and staff regarding the alleged incident more than a dozen times during the investigation, it was

not until his May 1, 2017 meeting, with the Case Manager, that Plaintiff was informed that the procedures had been revised and reissued nearly 6 months prior. on No administrator or staff member informed the Plaintiff that significant changes had been made to the Student Conduct Procedures during the nine (9) months Plaintiff had been under investigation.

13    Title IX guarantees that "[n]o person in the United States shall on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX "'bar[s] the imposition of university discipline where gender is a motivating factor," and is enforceable through a private right of action for damages as well as for injunctive relief. *Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714-15 (2d Cir. 1994)), *Collick v. William Paterson University* 2016 WL 6824374 (D. New Jersey 2016). The University receives federal funds, and so may be held liable under Title IX. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009).

14.    It is not lost on the Plaintiff that the notoriety promulgated by former President Obama's Administration, through the DOE and OCR, in delivering their 2011 Dear Colleague Letter **(Exhibit "N")** `as binding on regulated parties, for all practical purposes, pressured colleges and universities to aggressively pursue investigations of sexual assaults on campuses.

.    15.    Defendants throughout have acted in clear and unambiguous act of gender bias. Initially, the Defendants immediately require the Plaintiff change his classes, and

not his accuser, despite the fact that the incident only "may" involve a violation of Penn State's polices

16. Additionally, Defendants utterly failed to protect the Plaintiff from harassment and retaliation from Jane Roe and her family as required by law. The Office for Civil Rights requires that "Title IX includes protections against retaliation, and that school officials will not only take steps to prevent retaliation but also take strong responsive action if it occurs.

17, Defendants took no steps to protect the Plaintiff during the investigation for retaliation from his accuser and her parents. Following the September 8, 2016, No Contact Order **(Exhibit "B")** Defendants failed to provide a mutual directive to Jane Roe to cease contact with the Plaintiff. Defendants also failed to advise Jane Roe's parents of Defendants' policies and rules regarding confidentiality and non-retaliation. Immediately following Jane Roe's report, her parents openly notified other parents of students in their mutual pre-med program, using a group chat text, that one of the students in the group had committed "forcible sex offenses" against another pre-med student. Jane Roe's parents also sent threatening texts stating, "the assaulter is son of one of the family on this forum" and "the assaulter needs to be in prison" where "he gets raped by someone else" and "we will reveal name of the assaulter here and anywhere we feel fit including if possible newspapers." **(Exhibit "L")**

18. Although Plaintiff provided to the Defendants the texts and a description of what had occurred, the Defendants did not investigate or take any steps to prevent retaliation by the complainant's parents. These retaliatory actions had consequences as

7

Plaintiff received texts from a student who was also in the pre-medical program, declining to participate because her parents, who had read these false and retaliatory texts, did not want her to be involved. **(Exhibit "M")**

19. Pursuant to Federal Rule 65, the standard for issuing a temporary restraining order and a preliminary injunction are the same. To be successful in their application, a party needs to demonstrate:

(1) a likelihood of success on the merits; (2) the probability of irreparable harm if the relief is not granted; (3) that granting injunctive relief will not result in even greater harm to the other party; and (4) that granting relief will be in the public interest.

*URL Pharma, Inc. v. Reckitt Benckiser Inc.*, 2016 WL 1592695 (E.D. Pa April 20, 2016), *Citibank N.A. v Kyle*, 15-cv-3298, 2015 WL 3755788 (E.D. Pa, June 16 2015), B*ieros v. Nicola* 857 F. Supp. 445 ((E.D. Pa 1994), *Frank's GMC Truck Center, Inc. v. G.M.C.* 847 F.2d. 100,102 (3rd Cir 1988).

20. As demonstrated in the accompanying Memorandum of Law, consideration of these factors unquestionably supports Plaintiff's right to a temporary restraining order and subsequent preliminary injunction preventing Defendants from enforcing its egregious decision to suspend Plaintiff from Penn State for the fall 2017 semester and loss of participation in the prestigious Penn State Jefferson pre-med/medical program.

21. Plaintiff will likely succeed on his causes of action. Plaintiff has suffered, and will continue to suffer, irreparable harm, including the expulsion from the premed/medical program, suspension from college, inability to earn a medical degree, denied or impaired career and graduate school opportunities, and the lifelong stigma of

being labeled a violent sex offender. The harm to Plaintiff is without question far greater than any harm Defendants could possibly experience if the requested relief is granted. The public has an undeniable interest in ensuring the Defendants' wrongful, unfair, and discriminatory conduct is enjoined.

22..  Courts throughout the country have recognized in cases involving issues similar to those here, that immediate injunctive relief is appropriate. *See, e.g., Doe v. University of Notre Dame*, 2017 WL 1836939 (N.D. Indiana, South Bend Division May 8, 2017, *Ritter v. Oklahoma*, 2016 WL 2659602, at *8 (W.D. Okla. May 6, 2016); *King v. DePauw Univ.*, 2014 WL 4197507 (S.D. Ind. Aug. 22, 2014)

23.  As outline above and more fully established in the accompanying Brief, Plaintiff submits he has satisfies the factors outlined in *URL Pharma, Inc. v. Reckitt Benckiser Inc.* and should be afforded the opportunity to participate all classes in the upcoming Fall 2017 semester at Penn State University and its seven (7) year pre-med program.

**Dated: July 28, 2017**

                              **SUMMER, MCDONNELL, HUDOCK & GUTHRIE, P.C.**

                              **By:** */s/ Kevin D. Rauch*
                              **Kevin D. Rauch, Esq.**

                              **945 East Park Drive, Suite 201**
                              **Harrisburg, Pennsylvania**

                              **-and-**

**NESENOFF & MILTENBERG, LLP**

By: <u>*/s/ Andrew T. Miltenberg*</u>
**Andrew T. Miltenberg, Esq.**
(***Pro Hac Vice*** **Petition Pending**)
**Stuart Bernstein, Esq.**
(***Pro Hac Vice*** **Petition Pending**)
**Philip A. Byler, Esq.**
(***Pro Hac Vice*** **Petition Forthcoming**)
**Jeffrey S. Berkowitz, Esq.**
(***Pro Hac Vice*** **Petition Forthcoming**)

**363 Seventh Avenue, Fifth Floor**
**New York, New York 10001**

***Attorneys for Plaintiff John Doe***

## **EXHIBITS**

A- Judge Mathew W. Brann's July 27, 2017 Order permitting Plaintiff to serve a no more than 35 pages, in excess of Local Rule 15 page limit

B- Defendants' September 8, 2016 No Contact Order

C- Defendant Apicella's September 12, 2106 E-mail of Reported Incident

D- Defendant Feldbaum's May 11, 2016 E-mail Notifying of Charges

E- Defendants' June 27, 2017 Denial of Appeal

F- Plaintiff's June 1, 2017 Response to the Charges and Sanction Notification submitted to Investigator

G- Plaintiff's June 1, 2017 Response to the Charges and Sanction Notification submitted to Investigator that was Redacted by Defendants and submitted to Hearing Panel

H- Plaintiff's Questions to be posed to Complainant submitted to Hearing Panel

I- Defendants' June 7, 2017 Hearing Panel Decision

J- The Pennsylvania State University's Student Code of Conduct and Student Conduct Procedures, Revised 4/25/2016

K- The Pennsylvania State University's Student Code of Conduct and Student Conduct Procedures, Revised 11/3/2016

L- Copies of Text Messages from PSU-Jefferson Chat Room

M- Copy of Text Message between Plaintiff and Potential Witness

N- 2011 Dear Colleague Letter